UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LIGHTNING ROD MUTUAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 3:10-CV-00428-WCL-RBC ) ) |
| JAMIE COLE, Individually and as the Mother and Natural Guardian of KC, a Minor; JAMES H. HOWELL; LINDA K. HOWELL; KIM REIFF and ROXANNE REIFF, Individually and as the Parents and Natural Guardians of TLR, a Minor; and LISA HALL and SHAWN GRIFFITH, Individually and as the Parents and Natural Guardians of AWG, a Minor; UNITED FARM FAMILY MUTUAL INSURANCE COMPANY; and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Presently before the Court is Plaintiff, Lightning Rod Mutual Insurance Company's ("LRM's") "Motion for Summary Judgment" [DE 63] against defendants, Kim and Roxanne Reiff, Individually and as the Parents and Natural Guardians of TLR ("the Reiffs"), and Lisa Hall and Shawn Griffith, Individually and as the Parents and Natural Guardians of AWG ("Hall and Griffith").[1] The Defendants filed a timely response to which LRM replied. For the following reasons, the Motion for Summary Judgment will be GRANTED.

---

[1] Default judgments have been entered against Defendant James H. Howell [DE 31], Linda K. Howell [DE 32], and Jamie Cole, Individually and as the Mother and Natural Guardian of KC, a Minor [DE 38]. Agreed judgments have been entered against the remaining defendant insurance companies. Thus, the Reiffs, Hall, and Griffith are the sole remaining defendants in this action.

1

## Factual Background

The underlying facts of this case are undisputed and are as follows: LRM is an Ohio insurance company duly licensed to transact business in the Indiana. On May 11, 2008, LRM issued its Personal Auto Policy No. LPV 1300196490-8 to James H. Howell and Linda K. Howell of Huntington County, Indiana (the "Howells"), as the named insured, with effective dates of coverage of May 11, 2008, to November 11, 2008 (the "Policy"). Scheduled vehicle number 11 on the Policy was a 1997 Ford Contour (the "Auto"). This was a renewal policy which listed the scheduled drivers as James Howell, Linda Howell, and Joni Howell. The Howell's daughter, Jamie Cole[2] ("Cole"), was not a scheduled driver on the Policy nor was she a resident of the Howell's household in Huntington County, Indiana.

A few weeks before September 13, 2008, the Howells loaned the Auto to Cole, who kept the Auto at her residence in Pierceton, Kosciusko County, Indiana. As noted, Cole was not a scheduled driver under the Policy. The Howells also had not completed a "Request for Change" form seeking to add Cole to the Policy. The Howells had not paid LRM a premium to add Cole to the Policy nor had LRM amended the Policy to add Cole as a scheduled driver.[3]

Cole's twelve (12) year old daughter, KC, lived with Cole at her residence in Pierceton, Kosciusko County, Indiana. KC was not a licensed driver under the laws of any state, as she was a minor under the age of 16 years of age. However, on September 13, 2008, KC was operating the Auto when it was involved in an accident on County Road 750 South, near its intersection with

---

[2]LRM notes that the correct spelling is Jami Cole, not Jamie Cole as utilized in the caption of this case.

[3]The addition of Cole to the Policy would have required the Howells to pay a higher premium to account for the additional risk of adding a new scheduled driver.

2

County Road 600 East in Kosciusko County, Indiana (the "Accident"). TLR (age 13) and AWG (age 12) were passengers in the Auto at the time of the Accident, and suffered certain bodily injuries.

On September 1, 2010, the Reiffs filed their "Complaint for Damages and Jury Demand" (the "Reiff Complaint"), against, inter alia, Cole and KC in the following legal proceedings: "[TLR], *a Minor, By and Through her Parents and Next of Friends, Kim Reiff and Roxanne Reiff, Plaintiff, vs. [KC], A Minor, Jamie Cole, Individually and as Parent, Legal Guardian, and/or Next of Friend of [KC], James A. Howell, and United Farm Family Mutual Ins. Co., and/or UFB Casualty Ins. Co., d/b/a Indiana Farm Bureau Ins., Defendants*", Cause No. 43C01-1009-CT-475, Kosciusko Circuit Court (the "Reiff Lawsuit").

On September 10, 2010, Hall and Griffith filed their "Complaint for Damages and Jury Demand" (the "Griffith Complaint") against, inter alia, Cole and KC in the following legal proceedings: "[AWG],*a Minor, By and Through his Parents and Next of Friends, Lisa Hall and Shawn Griffith, Plaintiff, vs. [KC], a Minor, Jamie Cole, Individually and as Parent, Legal Guardian, and/or Next of Friend of [KC], James A Howell, and United Farm Family Mutual Ins. Co., d/b/a Indiana Farm Bureau Ins., and State Farm Mutual Automobile Ins. Co., d/b/a State Farm Ins., Defendants*", Cause No. 42C01-1009-CT-494, Kosciusko Circuit Court (the "Griffith Lawsuit"). The Reiff Lawsuit and the Griffith Lawsuit will be collectively referred to hereinafter as the "Lawsuits." Both the Lawsuits sought to hold KC liable on a negligence theory and Cole liable on theories of negligent supervision and negligent entrustment.

In September, 2010, LRM received a copy of the Lawsuits. LRM denied coverage for the Lawsuits, declined to defend Cole and KC against the same, and commenced this declaratory judgment action seeking a declaration that it has no duty to defend or indemnify Cole and KC. In addition, LRM seeks a declaration that its policy does not provide uninsured motorist bodily

injury("UIMBI") Coverage to the Reiffs, Hall and Griffith.

**<u>Policy Provisions</u>**

> The Policy's Liability Coverage insuring agreement reads as follows:
>
> We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

DE 59-4, p. 13.

> The Policy's Liability Coverage defines the term "insured" as follows:
>
> Insured as used in this Part means:
>
> 1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer".
>
> 2. Any person using "your covered auto".
>
> 3. For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.
>
> 4. For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This Provision (B.4) applies only if the person or organization does not own or hire the auto or "trailer".

DE 59-4, p. 13.

> The Policy defines the term "you" as follows:
>
> Throughout this policy, "you" and "your" refer to:
>
> 1. The "named insured" shown in the Declarations; and

2.  The spouse if a resident of the same household.

\* \* \* \* \*

DE 59-4, p. 11.

The Policy's Liability Coverage defines the term "family member" as follows:

> "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

DE 59-4, p. 11.

> The Policy defines the term "your covered auto" as follows:
>
> "Your covered auto" means:
> 1. Any vehicles shown in the Declarations.
>
> \* \* \* \* \*

DE 59-4, pp. 11-12.

> The Policy's Liability Coverage contains the following exclusion:
>
> We do not provide Liability Coverage for any "insured":
>
> \* \* \* \* \*
> 8.  Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (A.8.) does not apply to a "family member" using "your covered auto" which is owned by you.

DE 59-4, pp. 13-14.

> By endorsement, the Policy's UIMBI coverage insuring agreement reads as follows:
>
> A.  We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of:
>
>     1.  "Bodily injury" sustained by an "insured" and caused by an accident; and

5

* * * * *

　　The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

　　Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

DE 59-4, p. 35.

　　The Policy's UIMBI coverage defines the term "insured" as follows:

　　B.　　"Insured" as used in this Part means:

　　　　1.　　You or any "family member";

　　　　2.　　Any other person "occupying" "your covered auto";

　　　　3.　　Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

DE 59-4, p. 35.

　　The Policy's UIMBI coverage defines the term "uninsured motor vehicle", in relevant part, as follows:

　　D.　　"Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

　　　　　* * * * *
　　　　4.　　To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:

　　　　　　a.　　Denies coverage; or
　　　　　　b.　　Is or becomes insolvent.

　　However, "uninsured motor vehicle" does not include any vehicle or equipment:

　　　　　* * * * *
　　　　3.　　Owned by or furnished or available for the regular use of you or any "family member";

DE 59-4, pp. 35-36.

## Applicable Standard

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c)(2). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson,* 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

## DISCUSSION

Insurance policies typically impose dual obligations on the insurer – the duty to indemnify the insured against damages or losses, and the duty to defend against claims for damages. Because an insurance policy is a contract for insurance, they are governed by the same rules of construction as other contracts. *Briles v. Wausau Ins. Cos.,* 858 N.E.2d 208, 213 (Ind.Ct.App.2006) (citing *Gregg v. Cooper,* 812 N.E.2d 210, 215 (Ind.Ct.App.2004). As with other contracts, their interpretation is a question of law. *Briles,* 858 N.E.2d at 213.

When interpreting an insurance policy, the goal is to ascertain and enforce the parties' intent

as manifested in the insurance contract. *Id.* In reviewing policy terms, the court construes them "from the perspective of an ordinary policyholder of average intelligence." *Allgood v. Meridian Sec.Ins.Co.,* 836 N.E.2d 243, 246-47 (quoting *Burkett v. Am. Family Ins. Group,* 737 N.E.2d 447, 452 (Ind.Ct.App.2000)). Where an ambiguity exists, that is, where reasonably intelligent people may interpret the policy's language differently, courts construe insurance policies strictly against the insurer. *See Fidelity and Deposit Co. of Md. v. Pettis Dry Goods Co.,* 207 Ind. 38, 42 (1934) ( "any doubts or ambiguities must be resolved most strongly against" the insurer).[4] This is particularly the case where a policy excludes coverage. *Am. States Ins. Co. v. Kiger,* 662 N.E.2d 945 (Ind.1996). At the same time, interpretation should harmonize the policy's provisions rather than place its provisions in conflict. *Allgood,* 836 N.E.2d at 247.

An insurer's duty to defend its insureds against suit is broader than its coverage liability or duty to indemnify. *Trisler v. Indiana Ins. Co.* 575 N.E.2d 1021, 1023 (Ind.Ct.App. 1991). The insurer's duty to defend is determined from the allegations of the complaint and from those facts known to or ascertainable by the insurer after reasonable investigation. *Id.* If the pleadings disclose that a claim is clearly excluded under the policy, no defense is required. *Id.*

LRM argues that as a matter of law: (1) it has no duty under the Policy to defend and indemnify KC against the Lawsuits; (2) it has no duty under the Policy to defend and indemnify Cole against the Lawsuits; and (3) the Policy does not provide Uninsured Motorist Bodily Injury ("UMBI") coverage. Each shall be addressed in turn.

---

[4]Strict construction against the insurer derives from the disparity in bargaining power characteristic of parties to insurance contracts. *Wagner v. Yates,* 912 N.E.2d 805, 810 (Ind. 2009). "The insurance companies write the policies; we buy their forms or we do not buy insurance." *Id.* at 811 (quoting *Kiger,* 662 N.E.2d at 947). Nevertheless, we enforce limits on coverage where the policy unambiguously favors the insurer's interpretation.

8

### A. Duty to Defend and Indemnify KC

The Lawsuits seek to hold KC liable for negligently operating the Auto, thereby causing the Accident and resulting injuries to TLR and AWG. According to LRM, because KC was ineligible due to her age to receive either a learner's permit or an operator's license (in fact, she had neither at the time of the Accident) under Indiana law, she falls within the Policy provision that excludes coverage for an "insured" that uses "a vehicle without a reasonable belief that that 'insured' is entitled to do so." As the argument goes, it stands to reason that KC could not have had a reasonable belief that she was entitled to drive the Auto as a matter of law since she was not a licensed or even a permitted driver. *See Smith v. Cincinnati Ins. Co.*, 790 N.E.2d 460 (Ind. 2003) (holding that driver who possessed only a learner's permit lacked a reasonable belief that she had intoxicated owner's permission to drive, and, thus, owner's policy provided no liability coverage for driver; the driver was not legally entitled to drive.).[5]

Neither the Reiffs or Hall and Griffith respond to this argument or provide any basis upon which to contest the basic principle above. As a result, LRM is entitled to summary judgment as to the issue of whether the Policy requires it to defend or indemnify KC against the Lawsuits.

### B. Duty to Defend or Indemnify Cole

With respect to Cole, the Lawsuits allege that Cole negligently supervised KC and negligently entrusted the Auto to her. Under this theory, the Reiffs, Hall, and Griffith assert that the Policy covers Cole as an "insured," and thus, LRM has an obligation to defend the Lawsuits and

---

[5]The Exclusion cited above does not apply to a "'family member' using 'your covered auto' which is owned by you." However, there is no contention that KC qualifies as a family member as the Policy defines that term since she did not reside in the Howell's household at the time of the Accident. *See* DE 59-4, p. 11 (defining "family member" under the Policy as a related individual residing in the Insured's household.).

9

indemnify Cole. This theory hinges, of course, on whether the insuring clause in the Policy qualifies Cole as an "insured."[6]

Under the insuring clauses of the Policy, there are four ways in which Cole qualifies as an insured. Cole is an insured if she is (1) a named insured or family member; (2) if she is a person "using" a covered auto under the Policy; or (3) if she is vicariously liable for the conduct of an insured person under the Policy; or (4) if she is vicariously liable for an insured person's "use" of the Auto. Although there are four definitions of "insured" within the Policy, it is evident from the face of the Policy that Cole is not a named insured. Moreover, under the definition of "family member" i.e., a resident of the household, that Cole does not qualify as a "family member." Thus, the parties' focus lies with the second and third clauses, that is, whether Cole can be said to be "using" the vehicle at the time of the accident and whether she is subject to vicarious liability for KC's negligence.

The term "use" goes undefined in the policy. As a result, the Court must consider the term using principles of contract and insurance construction, which require that words be given their plain and ordinary meaning while construing the insurance policy as a whole. *Argonaut Ins. Co. v. Jones,* 953 N.E.2d 608, 617 (Ind.App.,2011). The most relevant definitions of "use" for the present purposes can be found in the Merriam Webster dictionary. In its noun form, "use" is defined as "the act or practice of employing something;" in its verb formulation "to use" is "to put into action or service **:** avail oneself of." *Merriam-Webster Online Dictionary.* The common thread of these two definitions is that they imply (in the noun context) and specify (in the verb context)

---

[6]Because Cole has been defaulted, the Reiffs, Hall, and Griffith step into her shoes for the purposes of determining whether coverage is afforded under the policy. The party claiming coverage has the burden to prove "insured" status under the Policy.

10

that the term requires a purposeful employment of a thing, i.e. availing oneself of an object or placing it into action. Indeed, the Indiana Court of Appeals has stated that its case law defines "use" as "to drive, operate, or direct the vehicle." *Estate of Sullivan v. Allstate Ins. Co.,* 841 N.E.2d 1220, 1225 (Ind.Ct.App.2006) (holding that merely being a passenger in a car does not constitute use); see also *Ohio Cas. Ins. Co. v. Herring-Jenkins,* 830 F.Supp.2d 566, 579 (N.D.Ind.,2011). Thus, the question before the Court is whether Cole can be said to have purposely acted or employed the Auto when her daughter illegally drove the vehicle and caused an accident. *See Argonaut,* 953 N.E.2d at 619 (stating that the issue is whether "there is an 'active' relationship between the claimant and the vehicle").

The Reiffs, Hall and Griffith point to a number of Indiana cases they contend support the theory that in Indiana the term "use" in an insurance policy s not strictly construed to mean the active driving, operation or direction of a vehicle. *See Franz v. State Farm Fire & Casualty,* 754 N.E.2d 978, 979 (Ind. Ct.App. 2001) (bus parked during a "bus pull" contest was in "use"); *Argonaut*, 953 N.E.2d 608 (a sheriff deputy standing outside her vehicle directing traffic was "using" the vehicle); *Monroe Guar. Ins. Co. v. Campos,* 582 N.E.2d 865, 870 (Ind.Ct.App.1991) (observing that reasonable people would expect that a tow truck operator must engage in other activities during the towing process, including exiting the vehicle for evaluation of the towing scene, securing the vehicle to be towed, attaching of the towing equipment to the disabled vehicle, and conferring with appropriate officials regarding safety procedures); *Stonington Ins. Co. v. Williams,* 922 N.E.2d 660, 670 (Ind.App.,2010) (truck driver for moving company that injured while entering a tractor he was required to load onto a trailer for moving "used" the vehicle as contemplated by the policy terms); *Illinois Farmers Ins. Co. v. Wiegand*, 808 N.E.2d 180

(Ind.Ct.App. 2004) (where homeowners' policy afforded coverage for injuries "resulting from use" of a motor vehicle, coverage was applicable in negligent entrustment/supervision claim when claimant, who was under the care of the insured, was injured in an ATV accident); *Wright v. American States Ins. Co.*, 765 N.E.2d 690 (Ind.Ct. App. 2002) (in negligent hiring case, court denied coverage under commercial general liability which excluded coverage for injuries "arising out of" the "use or entrustment" of any covered auto asserting that while van was in "use" the plaintiffs did not allege injuries arising out of that use). Thus, they contend that because Cole was entrusted with the vehicle, she can be said to be in "use" of the Auto under the Policy even when she was away from it.

In response, LRM points out that none of the above cases contain language identical to the language in its Policy and that several of the policies contain expansive language affording coverage in situation where the injuries "result from" or "arise out of" the "use" of the covered vehicle. Here, it contends, to qualify as an insured, Cole would have to be "using" or actively directing the vehicle in some fashion. Because she was not, it contends, the Reiffs', Hall and Griffith, are out of luck on their contention that she is covered under the Policy.

True enough, some of the cases cited by the Reiffs', Hall and Griffith are in agreement that "a person can be using a vehicle while not occupying it or maintaining any physical contact with it." *See* Argonaut Yet, in each of these cases what is readily apparent is that the vehicle was under the supervision and control of the alleged user. In other words, the vehicle was being operated to serve a purpose of the user. *See Argonaut,* 953 N.E.2d at 919 (sheriff was actively using the vehicle to serve the purpose of her employment*); Stonington Ins. Co.,* 922 N.E.2d 660 (moving truck operator was "using" truck in connection with employment as a mover); *Monroe*

12

*Guar. Ins. Co.,* 582 N.E.2d 865 (tow truck operator "used" the tow truck to serve the purpose of his tow truck business).

Recently, in *Ohio Cas. Ins. Co. v. Herring-Jenkins,* 830 F.Supp.2d at 579,[7] the Court was asked to determine whether a construction worker, Jenkins, was "using" a dump truck when he was struck and killed by a car while fixing potholes behind the dump truck supplied by another construction company.[8] The issue before the court was whether the construction worker (who never operated the dump truck) was, at the time of the accident actively exercising control over the vehicle so as to be "using" the vehicle under the terms of the tow truck owner's policy. In concluding that he was not exercising control and therefore was not "using" the vehicle, the Court distinguished several of the cases cited by the Reiffs, Hall, and Griffith in the present case:

> The Defendant cites to *Monroe Guaranty Insurance Co. v. Campos,* 582 N.E.2d 865 (Ind.Ct.App.1991), in support of its position that Jenkins was using the C. Lee truck. In *Campos,* the court held that a tow-truck operator was using his truck within the terms of the policy when he was struck by a motorist as he exited a police vehicle intending to walk back to his tow truck. The insurer claimed that Campos was not using the insured tow truck at the time of the accident within the terms of the policy. The *Campos* court disagreed, concluding that even though Campos was not inside the insured vehicle at the time of the accident, he had a more "active" relationship to the insured vehicle than someone who is a mere passenger, as in *Miller [v. Loman*, 518 N.E.2d 486 (Ind.Ct.App.1987)]. The court also focused on the nature of the insurance policy at issue, noting that it insured against accidents resulting from garage operations. Thus, the court framed the question as whether Campos was using the tow truck within the scope of garage operations although he had ceased to propel the vehicle. *Id. ...*
>
> *Campos* is distinguishable from the case before the Court because Campos had previously been actively exercising control over a vehicle but ceased to be propelling it at the time of the accident, whereas Jenkins never had control over the dump truck. At all times, Teslow was the driver...

---

[7]The case was decided by my division colleague, the Honorable Theresa L. Springmann.

[8] Under a subcontractor arrangement, a subcontractor supplied a driver and the dump truck to be used in the construction project.

*Ohio Cas. Ins. Co.,* 830 F.Supp.2d at 580 -581.

Moreover, the Court in *Ohio Casualty* also distinguished *Argonaut*, 953 N.E.2d at 619, again cited by the Reiffs, Hall and Griffith, from the facts of its case.

> In this same vein, *Argonaut* is distinguishable. The *Argonaut* court recognized that [use depends upon] "whether there is an 'active' relationship between the claimant and the vehicle, and the reasonable expectations of the parties upon entering into the insurance agreement are crucial questions to answer in determining coverage issues." 953 N.E.2d at 619 (internal citations omitted). Under this standard, the court concluded that a sheriff's department deputy who responded to the scene of a slide-off and parked her police vehicle in a manner to assist her in directing traffic and securing the scene was using her vehicle in a manner contemplated by the parties. The court stated that it was not the deputy's distance from her vehicle or time away from her car directing traffic that was determinative, but whether she was "in some active relationship to the vehicle at the time of the collision," and the insurance company had not designated any evidence that the deputy's actions with relation to her patrol car were inconsistent with using the car for controlling traffic around the slide-off site or were anything other than central to that purpose. *Id.*

After distinguishing the above cases and noting that the issue was "highly fact sensitive," the Court ultimately concluded that "Jenkins never had active control of the dump truck. He did not drive it to or from the worksite. Teslow, the insured's employee, was the driver at all times." *Ohio Cas. Ins. Co.,* 830 F.Supp.2d at 580 -581. Thus, the Court held that "Indiana courts would hold that Jenkins was not using or occupying the C. Lee dump truck, and thus there can be no coverage under the Policy." *Id. at 582.*

Following the reasoning in *Ohio Casualty* and applying it in this case, it is undisputed that Cole was not driving or operating the vehicle. From all accounts KC engaged in an episode of joy-riding with her friends and without the permission of the Howells or her mother, Cole. Neither party has presented any evidence to suggest that KC was engaging in any activity to further the purpose

of Cole nor is there any evidence that Cole directed the use of the vehicle in any way so as to further a legitimate purpose of hers. Rather, the car was being "used" solely for KC's own, albeit illegal, purposes. Cole was not in the vehicle; she did not direct the vehicle; she did not purposefully employ the vehicle. On these facts, the court is hard-pressed to conclude that Cole engaged in "use" of the covered auto so as to afford coverage under the Policy. Accordingly, the Court concludes that Cole did not "use" the Auto as that term is contemplated in the Policy and she does not qualify as an "insured" under the second definition in the Insuring clause of the Policy.

The Reiffs, Hall and Griffith also seek to have Cole defined as an "insured" under the third clause of the Insuring Agreement. That clause provides that "insured" means:

> 3. For "your covered auto," any person ...but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

According to the Reiffs, Hall and Griffith, Cole qualifies as a person and the Auto that was involved in the accident qualifies as a "covered auto." They then go on to assert that "a person for whom coverage is afforded under this Part" is ambiguous and must be construed in their favor. This argument, however, fails for two reasons.

Part A of the Policy provides for Liability Coverages. Subsection B(3) of Part A, under which the Reiffs, Hall and Griffith seek coverage, clearly and unambiguously limits insured status to any person, liable for the acts or omissions of another person "for whom coverage is afforded under this Part." As stated above "this Part" clearly designates Part A which sets out the extent of liability coverage under the Policy. Here, the Lawsuits seek to hold Cole responsible for negligent entrustment and negligent supervision. These Lawsuits are intended to hold Cole

15

accountable for her own alleged negligence. They do not seek to hold her responsible for the acts of KC. Thus, as a matter of law, Cole cannot be considered a Clause 3 insured since the Lawsuits do not seek to hold her legally responsible for the acts of another. *See Hibbs v. Hernandez,* 2006 WL 389857, 3 (E.D.Tenn. 2006) ("The focus of a negligent entrustment claim is on the entrustor's alleged negligence in loaning or selling chattel to the entrustee, not on the entrustee's alleged negligence."); *see also, Mid-Century Ins. Co. v. Heritage Drug, Ltd.*, 3 P.3d 461 (Colo. Ct. App. 1999) ("It is generally held that a claim of negligent entrustment does not arise out of vicarious liability or imputed negligence, but rather the entrustor's own negligence in making the entrustment.").

Moreover, even if the Reiffs, Hall, and Griffith could argue that they seek to hold Cole accountable for the acts of KC they would have to show that KC was afforded coverage under Part A. As noted in the opening discussion, they have not done so since KC, as an unlicensed minor driver, cannot be considered an insured. As a result, then, Cole cannot qualify as a Clause 3 insured.

In sum, Cole is not an "insured" under the Policy and thus, LRM has no obligation to defend or indemnify under its Policy. Summary Judgment in favor of LRM is therefore, GRANTED.

### C. Coverage under the UIMBI Clause

Next the Reiffs, Hall and Griffith assert that they are entitled to Uninsured Motorist Bodily Injury coverage. The Policy's UIMBI insuring agreement provides, in relevant part:

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured

motor vehicle" because of:

    1.    "Bodily injury" sustained by an "insured" and caused by an accident; and

\* \* \* \* \*

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

DE 59-4, p. 35. The Policy's UMBI coverage defines the term "uninsured motor vehicle", in relevant part, as follows:

    D.    "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

\* \* \* \* \*

    4.    To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:

        a.    Denies coverage; or
        b.    Is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

\* \* \* \* \*

    3.    Owned by or furnished or available for the regular use of you or any "family member";

DE 59-4, pp. 35-36.

The Policy's UMBI coverage defines the term "insured" as follows:

    B.    "Insured" as used in this Part means:

        1.    You or any "family member";
        2.    Any other person "occupying" "your covered auto";
        3.    Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

DE 59-4, p. 35.

Here, LRM paid out $5,000 each to TLR and AWG under Part B, the Medical Payments Coverage provision, of the Policy. Under that provision, the two minors were considered insured "occupants" of the vehicle and thus, were entitled to recovery of reasonable expenses incurred because of bodily injuring occurring to them caused by the accident. DE 59-4, p. 16. According to the Reiffs, Hall and Griffith, Indiana's public policy requires LRM to provide UIMBI benefits since they are covered under the Medical Payments Coverage.

Indiana Code section 27–7–5–2 requires that insurers make underinsured motorist coverage available to those whom they insure. The purpose of uninsured motorists insurance is to place the insured in substantially the same position as if the other party had complied with the minimum requirements of the insurance statutes. *Whitledge v. Jordan,* 586 N.E.2d 884, 886 (Ind.Ct.App.1992), *trans. denied.* Attempts to limit or diminish the uninsured motorists protection required by statute [are] against the public policy of this state. *American States Ins. Co. v. Braden,* 625 N.E.2d 1252, 1257 (Ind.Ct.App.1993), *trans. dismissed.* However, courts have uniformly held that public policy is not violated unless "the policy specifically limits uninsured motorist coverage as to persons who would otherwise qualify as insureds for liability purposes." *Whitledge,* 586 N.E.2d at 887. Restated, if a person qualifies as an insured under the liability section of the policy, he must also qualify under the uninsured motorists section or the insurance contract violates public policy. *Connell v. American Underwriters, Inc.,* 453 N.E.2d 1028, 1031 (Ind.Ct.App.1983), *trans. denied.*

Here, LRM argues that because the Indiana Code does not mandate that insurance policies issued in Indiana include Medical Payment coverage nor does any statute provide that one qualifying for Medical Payment coverage must also qualify for UIMBI coverage, the Reiffs, Hall

18

and Griffith are not entitled to UIMBI benefits.

As a general rule, where provisions of an uninsured motorist endorsement are more restrictive than an Indiana statute, the requirements of the statute prevail. See *Taylor v. American Underwriters, Inc.*, 352 N.E.2d 86, 89 (Ind.Ct.App. 1976). However, where a type of insurance is not statutorily mandated, the matter is one of contract between the insurer and insured. *Id.* at 91 (where hit and run coverage was not required by Indiana statute, "insurer is entitled to establish limits on broader coverage... provision is one of contract between the parties.").

In this case, the Policy's Medical Payments coverage was a matter of contract between LRM and the Howells. Pursuant to that contract, it is clear that the parties did not intend to extend Medical Payments coverage to persons who would not qualify for UIMBI coverage. Further, since medical payments coverage is not mandated under Indiana law, LRM's contract provision cannot be said to violate any public policy of Indiana. Thus, LRM's Motion for Summary Judgment is GRANTED as to whether the Policy requires payment of UIMBI benefits.[9]

## **CONCLUSION**

Based on the foregoing, LRM's Motion for Summary Judgment [DE 57] is GRANTED in its entirety. The Clerk is directed to enter judgment in favor of LRM.

Entered: This 21th day of September, 2012

s/William C. Lee

---

[9] In its initial brief, LRM argues that the Auto does not qualify under the Policy as an Uninsured Motor Vehicle. The defendants' brief addresses this argument only as it relates to the public policy discussion above. They do not argue that, in fact, the Auto is an "uninsured motor vehicle."